UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

SEP 2 7 2006

CIVIL ACTION NO. 05-468-GWU

VERLIN MONEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff previously filed an application for Disability Insurance Benefits (DIB) in March, 2001, alleging inability to work beginning November 20, 1990 due to post-traumatic stress disorder (PTSD), depression, and physical problems. (Tr. 94, 141). After a period of reconsideration prompted by the undersigned's Memorandum Opinion and Order of March 10, 2004, Money v. Barnhart, London Civil Action No. 03-82 (E.D. Ky.) (Tr. 474-84), the case is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind

1

shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to

2

Money

perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

3

Money

using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Court's remand was based upon the failure of the administrative law judge (ALJ) and of mental status reviewers to consider "potentially pivotal" psychological evidence from Mr. Money's treating sources at the Veterans Administration Medical Center (VAMC), where he was being treated for PTSD related to infantry combat in Vietnam. The Court noted that the relevant time period was between Mr. Money's alleged onset date of November 20, 1990 and his Date Last Insured (DLI) of December 31, 1995. (Tr. 43). Reports from Dr. Erling Eng, a treating psychological source, cosigned by Dr. Kim Larmore, a psychiatrist, state that in 1999 and 2000 that the plaintiff's Global Assessment of Functioning (GAF) score ranged from 45 to 50. (Tr. 108-9, 544-7). Both of the scores represented "serious impairment" per the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Text Revision, p. 34. Moreover, Dr. Eng indicated that the plaintiff's

4

symptoms were "basically unchanged" since his first admission to the VAMC on July 11, 1986, when he had also been diagnosed with PTSD. (Tr. 108). A remand was ordered for review of all the evidence by medical expert. (Tr. 484).

However, on remand, no medical expert was consulted. An additional psychological examination was obtained from Mr. James Leisenring on July 1, 2004, but Mr. Leisenring was not provided with the VAMC records, although these were clearly available to the state agency at this point. (Tr. 510).[1]

Although the ALJ did consider the VAMC report from Dr. Eng on remand (Tr. 426-7), she concluded, for somewhat unclear reasons, that Mr. Money would have the same residual functional capacity as previously determined; namely, medium work with a "limited but satisfactory" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 429). All of the other psychological reports considered by the ALJ were from 2000 or after (i.e.,

---

[1] It is noteworthy that, although Mr. Leisenring's opinion did not "relate back" to the period before the DLI, his report, although equivocal in some respects, concluded with a mental Medical Assessment form indicating that Mr. Money would have no useful ability to deal with work stresses and would have a "seriously limited but not precluded" ability to relate to co-workers, deal with the public, use judgment, function independently, maintain attention and concentration, and relate predictably in social situations. (Tr. 508-9).

5

Money

at least four years after the DLI) and only the VAMC sources had access to records from the relevant period. The ALJ conceded that the GAF scores represented "serious" symptoms/limitations. (Tr. 427).

Since the VAMC records indicate that the plaintiff's PTSD symptoms had been essentially unchanged since the late 1980s, and no psychological or psychiatric source has contradicted their conclusions, the Court concludes that no useful purpose would be served by another remand. An order and judgment will enter awarding DIB benefits to the plaintiff with an onset date of November 20, 1990, the date he stopped working. (Tr. 94, 450).

This the __27__ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE